IN THE CIRCUIT COURT OF ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

GAYLE HELMAN and
THOMAS TERWILLIGER,

CASE NO.: 11-28138 CA01

     Plaintiffs,

vs.

PAUL GIARMOLEO, PRIVATE
RESOURCES, LLC, a Wyoming Limited
Liability Company, GOLDEN KEY, LLC, a
New York, Limited Liability Company, jointly
and severally and ALPINE SECURITIES
CORPORATION, a Utah corporation.

     Defendants.

ORIGINAL
FILED
NOV 10 2011

---

## SECOND AMENDED COMPLAINT

     COMES NOW, Plaintiffs GAYLE HELMAN and THOMAS TERWILLIGER, through

the undersigned counsel, files this Complaint against Defendants and as grounds therefore states

the following:

### SUMMARY

     This case is about a former securities broker, PAUL GIARMOLEO, who had his license

suspended by the securities board for committing fraud and who then engaged in a scheme to

obtain, under false pretenses, control of Plaintiffs' shares (the "Shares") in a company known as

Compress Technologies.  GIARMOLEO was to hold and promote these Shares in trust for the

benefit of Plaintiffs while they performed due diligence on another company known as Libertas,

Inc.  The money raised from the eventual sale of Plaintiffs' Compress Technologies Shares

would allow Plaintiffs to purchase shares in Libertas.  The final aspect of the transaction would

allow Plaintiffs to exchange the Libertas shares for restricted shares in Compress Technologies.

1



But, when the due diligence of Libertas revealed a serious violation of securities laws, GIARMOLEO and/or his affiliated companies (i.e. Private Resources and Golden Key) refused to return Plaintiffs' Shares in Compress Technologies, even though the transaction did not go forward. GIARMOLEO, and the companies he controls, have absolutely no right to Plaintiffs' Shares and they must be returned to Plaintiffs pursuant to the agreement and to prevent a fraud and unjust enrichment. Until then, injunctive relief is necessary because GIARMOLEO continues to transfer and change the names of Plaintiff's Shares with the hope of secreting Plaintiffs' shares, which are currently in the name and possession of Alpine Securities Corp ("ALPCO").

## JURISDICTION

1.      This Court has jurisdiction of this claim in that this is an action in damages in excess of $15,000, exclusive of interests and costs.

## VENUE

2.      Venue is proper in Miami-Dade County because this is where all the acts complained of and the events giving rise to Plaintiffs claims accrued. The cause of action was negotiated, agreed to by the parties in Miami-Dade County. Plaintiff Helman executed and ordered, at Defendants' request and solicitation, the transfer of her Compress Technologies shares to Defendants from the offices of Compress Technologies, Inc. 16500 NW 1st Avenue, Suite 300, Miami, Florida, 33169, where the company's stock books and records were maintained, including Plaintiffs' shares. The cause of action "accrued" in Miami-Dade County as this is where the tort occurred, where representations were made to the Plaintiffs, where Defendants solicited Plaintiff's shares and investments, where the Defendants agreed to return the shares and/or money, and where Plaintiffs maintained residencies.

**PARTIES**

3.    Plaintiff GAYLE HELMAN is a resident of Florida and *sur juris* and the owner of the Shares in Compress Technologies at issue in this case.

4.    Plaintiff THOMAS TERWILLIGER is a resident of Florida and *sur juris* and holds a security interest in, and lien on, the Shares at issue in this case, was well as other shares of Stadium Entertainment (formerly Compress Technologies) which are threatened by the Defendants' action.

5.    Defendant PAUL GIARMOLEO is a resident of Florida and *sur juris*.  At all relevant times, Defendant GIARMOLEO held himself out as a resident of Florida, including the filing of official documents with the State of Florida as the registered agent of two companies in April and May 2010.  See Exhibit A.  As a result thereof, GIARMOLEO is estopped from denying that he is a resident of Florida.  Additionally, Defendant GIARMOLEO conducted, engaged in, and carried on business in Florida, had an agent in this state, committed tortious acts in this state, used real property in this state, caused injury to Plaintiffs by an act of omission in relation to solicitation or service activities in this state, breached a contract by failing to perform acts to be performed in the state, and engaged in substantial activity in this state.  GIARMOLEO solicited investments, arranged for investments and provided business related services in Florida

6.    Defendant GOLDEN KEY, LLC, a New York, Limited Liability Company (hereafter "GOLDEN KEY").  Defendant GOLDEN KEY conducted, engaged in, and carried on business in Florida, had an agent in this state, committed tortious acts in this state, used real property in this state, caused injury to Plaintiffs by an act of omission in relation to solicitation or service activities in this state, breached a contract by failing to perform acts to be performed in

the state, and engaged in substantial activity in this state. At all relevant times, GIARMOLEO acted as an agent and representative of GOLDEN KEY.

7.    Defendant   PRIVATE   RESOURCES,   LLC,   (hereafter   "PRIVATE RESOURCES") a Wyoming Limited Liability Company. Defendant PRIVATE RESOURCES conducted, engaged in, and carried on business in Florida, had an agent in this state, committed tortious acts in this state, used real property in this state, caused injury to Plaintiffs by an act of omission in relation to solicitation or service activities in this state, breached a contract by failing to perform acts to be performed in the state, and engaged in substantial activity in this state. At all relevant times, GIARMOLEO acted as an agent and representative of PRIVATE RESOURCES.

8.    Defendant ALPINE SECURITIES CORPORATION (doing business as ALPCO and hereinafter referred to as "ALPCO") is holding the Shares in Compress Technologies, which are owned by Plaintiff HELMAN. ALPCO is a Utah corporation who conducted, engaged in, and carried on business in Florida, is licensed to do business in this state, used real property in this state, caused injury to Plaintiffs by an act of omission in relation to service activities in this state, and/or engaged in substantial activity in this state.

<u>GENERAL ALLEGATIONS</u>

9.    GIARMOLEO is a stock promoter and *formerly* a licensed stock broker.

10.    At all relevant times, GIARMOLEO routinely engaged in business and solicited business and investments, and other activities, in Florida. GIARMOLEO did this personally and through Frank Labrozzi, an agent and representative of GIARMOLEO.

11.     During his solicitation and business arrangements in Florida, GIARMOLEO routinely used the names of companies controlled by him, including GOLDEN KEY and PRIVATE RESOURCES.

12.     GIARMOLEO knew that Plaintiffs owned stock in Compress Technologies and that Plaintiffs resided in Florida.  He also knew that the president/secretary of the company, as well as the company's engineering offices, were located in Florida, along with the Company's books and records.

13.     At all relevant times, GIARMOLEO knew that Compress Technologies was a public company with free-trading stock, with its stock books located in Miami, Florida.

14.     Beginning in early 2008 and for few years thereafter, GIARMOLEO routinely contacted Plaintiffs in Florida and solicited Plaintiffs' monies and stock by promoting, recommending and offering investments in various companies, including at least one Florida company.

15.     In every instance, GIARMOLEO intended to obtain a benefit from the transaction (i.e., an illegal broker fee), despite the fact that he was no longer licensed as a broker.

16.     In February 2010, GIARMOLEO initiated a conference call to Florida to discuss an investment in a beer manufacturing company known as Libertas, Inc. (Libertas was a company being promoted by GIARMOLEO).  GIARMOLEO and/or his agents represented that Libertas needed money to begin production, to create distributorships and begin marketing.

17.     Although GIARMOLEO represented that he had intimate knowledge of Libertas and knew the owners, he failed to disclose that he and one of his companies, GOLDEN KEY, maintained at least five (5) percent ownership interest in Libertas.  GIARMOLEO held shares in

Libertas and stood to make a substantial amount of money from the sale of Libertas stock or the acquisition of that company by another company or in taking that company public.

18.     Through emails and phone calls to Florida and through agents located in Florida, GIARMOLEO solicited and recommended that Plaintiffs allow GIARMOLEO to promote and sell the Shares in Compress Technologies as apart of a three prong transaction to purchase Libertas.

19.     On April 17, 2010, GIARMOLEO offered to help Plaintiffs sell the Shares in Compress Technologies and to promote the transaction so that the money from the increased value of the shares would be returned to Plaintiffs in Florida. Plaintiffs would then use those funds in Florida to purchase shares in Libertas and GIARMOLEO would ensure that Libertas shares were sent to Plaintiffs in Florida. Plaintiffs could exchange the Libertas shares with Compress Technologies. In exchange for receiving the Libertas shares, Compress Technologies would issue different (restricted) shares to Plaintiffs in Florida--shares in Compress Technologies that would be more valuable due to the Libertas shares being held by Compress Technologies.

20.     The plan would require the promotion and sale of a total of 24,000,000 of Compress Technologies shares, but an initial 7,000,000 Shares were needed to initiate the plan.

21.     As a condition precedent to the transaction, it was agreed that Plaintiffs and Compress Technologies would be allowed to conduct due diligence on Libertas to ensure that the purchase of Libertas shares was viable and that there were no red flags that would prevent Plaintiffs from purchasing Libertas shares and/or Compress Technologies from exchanging Libertas shares for new shares in Compress Technologies. Plaintiffs could cancel the transaction based on the due diligence on Libertas.

22.    GIARMOLEO represented that Plaintiffs' Shares would need to be transferred from Florida to GIARMOLEO so he could promote the transaction and sell Plaintiffs' Shares to raise the money. GIARMOLEO was to hold the Shares and money in trust for the benefit of Plaintiffs and to ensure the entire transaction could be completed.    If not, the Shares, or any portion thereof, were to be returned to Plaintiffs in Florida.

23.    As part of the arrangement, GIARMOLEO and/or his agents provided Plaintiffs with a spreadsheet that outlined the money that would be made from the Shares. GIARMOLEO further represented that all parties, including Plaintiffs, would make money on the transaction.

24.    The spreadsheet shows that Plaintiffs were to receive approximately $1,500,000 for the 7,000,000 shares, which constituted 65 percent of the estimated value. See Exhibit B. Giarmoleo was the de facto broker and set to received 35 percent for the promotion and eventual sale of Plaintiff's Shares.

25.    At all relevant times GIARMOLEO intentionally mislead Plaintiffs to believe that he was skilled in the distribution and sale of a large volume of shares of stock into a market with no or a limited amounts of trading.

26.    Plaintiffs relied on GIARMOLEO's representations by transferring Plaintiffs' Shares to his control, or the control/name of one of his companies.

27.    Unbeknownst to Plaintiffs, on April 30, 2008, GIARMOLEO was fined and had had his securities brokers' license suspended due to fraud in relation to the recommendation and promotion of stock. Moreover, GIARMOLEO is not a licensed broker in Florida.

28.    Plaintiffs relied on the representations made by GIARMOLEO and, based on these representations made by GIARMOLEO and/or his agents, Plaintiff Helman was induced into agreeing to transfer her 7,000,000 common shares of Compress Technologies, Inc. to

Defendant GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES for the sum of $1,592,500, conditioned upon the due diligence of Libertas.

29.     Based on GIARMOLEO's representations, Plaintiff Terwilliger agreed to suspend his security interest in Plaintiff Helman's shares, but effective only after the completion of the due diligence of Libertas, and condition upon the viability of the entire transaction, whereby Terwilliger would receive a subsequent security interest in the subsequent restricted shares that would be issued by Compress Technologies to Plaintiff Helman in exchange for the Libertas shares.

30.     Based on GIARMOLEO'S offer, on or about April 29, 2010, Plaintiff HELMAN and GIARMOLEO entered into an agreement whereby HELMAN would transfer her 7,000,000 Compress Technologies shares (the "Shares") to GIARMOLEO and in exchange Defendant GIARMOLEO would promote Compress Technologies and provide Plaintiff HELMAN with $1,592,500.  HELMAN would then purchase Libertas shares and transfer them to Compress Technologies in exchange for restricted shares in Compress Technologies.

31.     To get the deal moving quickly, Plaintiffs had already began requesting the information to begin the due diligence on Libertas.

32.     GIARMOLEO contacted Plaintiffs in Florida.  GIARMOLEO stated that it would take some time to get the Compress Shares transferred and then promoted.  Thus, to help "speed things up" and ensure there were no delays, he needed Plaintiffs to transfer the Shares to his control now.  He asked that the 7,000,000 shares be transferred from Florida to a transfer agent in Utah.  He reassured Plaintiffs that they could cancel the transaction and the Shares would be returned, if there were any issues raised by the due diligence on Libertas.

33.     It was at this time that GIARMOLEO asked that he be allowed to use a company he owned and controlled, GOLDEN KEY, as part of the transaction and employ its services to promote the Shares.  Plaintiffs agreed to the assignment, but Plaintiffs did not agree to allow GOLDEN KEY to assume the duties of GIARMOLEO.

34.     GIARMOLEO then contacted Plaintiffs in Florida and indicated that he wanted to employ PRIVATE RESOURCES, another company used, owned and controlled by GIARMOLEO, to effectuate the promotion and asked that Plaintiff Helman's shares be placed in the name of PRIVATE RESOURCES.

35.     On May 3, 2010, Plaintiffs caused to be transferred, at GIARMOLEO's request, the 7,000,000 Shares based on the representation and promises made by GIARMOLEO that the Shares would be returned to Plaintiffs if due diligence revealed anything negative.

36.     On May 19, 2010, Plaintiffs were still trying to gather due diligence on Libertas.

37.     The due diligence dragged on for over a month, at which time Plaintiffs discovered that Libertas had a serious securities violation—a death nail to the entire transaction.

38.     The due diligence also disclosed that GIARMOLEO and GOLDEN KEY owned five percent of the shares in Libertas since May 2009.

39.     Based on the serious securities law violations and his interest in Libertas, it now became clear why GIARMOLEO wanted Plaintiffs to transfer the shares before the due diligence could be completed.

40.     GIARMOLEO was well aware of the disclosures required prior to seeking one's investment in a private company, through the purchased of private securities.  GIARMOLEO also knew that any past or present regulatory problems with the SEC/NASD significantly diminished the value of a company.

9

41.    As an owner in the Company and experienced broker (who had his license suspended for fraud), GIARMOLEO knew of the securities violation and intentionally concealed said information from Plaintiffs to mislead them into believing Libertas was valuable and to induce them to transfer the Shares before the due diligence could be completed.

42.    Plaintiffs contacted GIARMOLEO and asked him to return the Shares.

43.    GIARMOLEO refused to return Plaintiff's Shares in Compress Technologies.

44.    This was further proof of GIARMOLEO's bad faith and that he never intended to return Plaintiffs' stock.   His actions are even more shocking, given the fiduciary relationship.

45.    Plaintiffs learned that Defendants had transferred the Shares to the Cayman Islands.

46.    For months, Plaintiffs believed the Shares were gone.

47.    Then Plaintiffs learned that the Shares had been returned from the Cayman Islands.

48.    At one point, Plaintiffs learned that almost half of the stock was in the possession of Frank Labrozzi.   The 3,497,350 (separate from the shares above) of Plaintiff's Shares were transferred by Defendants GIARMOLEO, PRIVATE RESOURCES and/or GOLDEN KEY to Gary Frank Labrozzi ("Labrozzi").  Labrozzi has agreed to lock the shares for safekeeping.

49.    The Shares were headed back to the transfer agent in Utah.

50.    Plaintiff filed this action on September 2, 2011.

51.    On or about September 16, 2011 the Transfer Agent, Standard Registrar and Transfer Company, Inc., cancelled certificate #912. During this time, the Compress Shares were re-named Stadium Entertainment Holdings, Inc. (SEHI)

52.    After this lawsuit was filed and at the direction GIARMOLEO and/or his companies, the Transfer Agent reissued such certificate as SEHI certificate #918. The Shares are now in the name of ALPCO.

53.    The Transfer Agent then sent the Shares in its possession to ALPCO.

54.    Based on information and belief, Plaintiff Helman's 3,497,350 shares are currently in the possession, custody and name of ALPCO, Alpine Securities Corp, a Utah corporation as certificate number #918.

55.    ALPCO has been informed of the facts surrounding the Shares and is aware that the true client is Plaintiffs as Defendants GIARMOLEO, GOLDEN KEY and/or PRIVATE RESOURCES are holding, and were to be holding, the Shares in trust for Plaintiffs' benefit.

56.    Plaintiffs seek to recover the Shares from ALPCO and have their rights to the Shares declared by this Court as to all 7,000,000 Shares so they can be free from suspicion and returned to their rightful owner.

57.    5,300 of Plaintiff's Compress Shares are not at the Transfer Agent nor assigned to Labrozzi. The whereabouts of these 5,300 Compress Shares is unknown. Plaintiffs also seek to locate the missing 5,300 Compress Shares and to have their rights to the shares declared by this Court so they can be free from suspicion and returned to their rightful owner—Plaintiffs.

58.    At all relevant times, GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES held a position of trust with respect to Plaintiff's shares. There was no agreement to sell Plaintiffs' Shares to any of the Defendants, but only a transfer legal title so the shares could be held and sold for Plaintiffs' benefit. Indeed, Defendants have not provided Plaintiffs with any consideration for the shares. The broker is refusing to return the Shares.

59.   Plaintiffs have demanded the return of the Shares, but Defendants have refused to return the Shares and have threatened to dump the Shares on the market to cause injury and extort money from Plaintiffs.

60.   Since April 2010, Plaintiffs have been deprived of the economic benefit and ownership of the Shares.   Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES have breached their duties, which are fiduciary in nature, and have caused, and are continuing to cause, Plaintiffs significant harm.

61.   Despite Plaintiffs' request, ALPCO has not acknowledged Plaintiff's ownership and security interest and the fiduciary duties owed by the remaining Defendants to Plaintiffs. Given the notice provide by Plaintiffs and clear lack of any consideration paid by Defendants for these Shares, Plaintiffs maintain that any action by ALPCO to transfer any of the Shares would result in the conversion of property and assist in the breach of fiduciary duties, as ALPCO has been made aware that Defendants do not own the shares and demand has been made for the return of Plaintiffs' property.

62.   Plaintiffs have retained the undersigned to assist them in this matter and agreed to pay a reasonable sum of money in relation thereto.

63.   All conditions precedent to this lawsuit have been met, satisfied, waived or excused by the Defendants' conduct.

**COUNT ONE**
**INJUNCTIVE RELIEF**
**(Against All Defendants)**

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

64.   This is an action for temporary and permanent injunctive relief.

65.    None of the Defendants have any right to the 7,000,000 shares at issue in this case.

66.    None of the Defendants paid any consideration to Plaintiffs for those shares.

67.    Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES were to hold legal title to Plaintiffs' Shares in trust and owed fiduciary duties to Plaintiffs, including the return of those Shares, when the due diligence on Libertas caused the entire deal to fall through.  ALPCO is Defendants' agent and is in actual possession of some of Plaintiffs' Shares and in the name of ALPCO.

68.    GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES obtained possession of the Shares through fraud and false pretenses, the most important being that the shares were to be returned to Plaintiffs, if due diligence on Libertas revealed anything negative. GIARMOLEO knew of the issue with Libertas, was part owner of Libertas and misrepresented the Libertas transaction to Plaintiffs.

69.    GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES have converted and misappropriated Plaintiff's Shares.

70.    Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES have moved the Shares all over the country, and even out of the country to the Cayman Islands, to try to secret the shares and to change the name and keep them from Plaintiffs.

71.    Plaintiffs will suffer irreparable harm if Defendants are not restrained from selling, transferring or in any way using the Shares.

72.    Without injunctive relief, Defendants would be able, and have threatened to "dump" or flood the public market with Shares, for which they have no basis, thereby driving the market price down injuring not only Plaintiffs but also an unknown number of innocent public

market investors.  Further, any downward pricing will devalue the market cap of the company causing the company and all its shareholders to reduce its public value.  The Defendants are abusing their fiduciary duties and trying to extort money from Plaintiffs.

73.  The release of the Shares into the market place will cause serious irreparable damage to Plaintiffs and the public, including owners of Stadium Entertainment (which Plaintiff Terwilliger also owns shares in) and there is an inadequate remedy at law.

74.  At all relevant times, Plaintiffs retained equitable interest in the 7,000,000 Shares and Defendants have a duty to hold the Shares in trust, which the Court should order and construct over the Shares.

75.  It is in the public's interest to restrain the Defendants' conduct.

WHEREFORE Plaintiffs request the Court enjoin the Defendants from moving, transferring, dissipating the Shares or directing them to deposit said Shares with the Court, until such time as this Court declares Plaintiffs' ownership and interest in said 7,000,000 Shares and the return of those Shares to Plaintiff in Florida, and any other such ancillary relief that this court deems just and proper under the circumstances.

## COUNT TWO
### EQUITABLE LIEN/CONSTRUCTIVE TRUST
#### (Against All Defendants)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

76.  This is an action for an equitable lien and to impose a constructive trust over the shares.

77.  At all times, Plaintiffs maintained their equitable interest in the shares in the Defendants' possession and control.

14

78.    At all times, it was agreed that Plaintiffs would be allowed to cancel the transaction, if they discovered anything negative during the due diligence period. Based on the promises, Defendants GIARMOLEO convinced Plaintiff Helman to transfer her Shares during the due diligence and Plaintiff Terwilliger to suspend his security interest in said Shares. GIARMOLEO promised to hold the Shares in trust, and reassured Plaintiffs that, if anything negative was discovered, the Shares would be immediately returned to Plaintiffs.    The relationship created was a de facto brokerage relationship of trust and confidence.

79.    Defendants have exploited the relationship by misappropriating and converting Plaintiffs' Shares to their own use and Defendants are refusing to comply with the agreement and to fulfill their promises and their duties to return the Shares.   Instead, they plan to use those Shares for matters that are wholly unrelated to the Libertas deal, unauthorized and to unjustly enrich themselves.

80.    Defendants, and/or their agents, obtained possession and control of the title to Plaintiffs' 7,000,000 shares under false representations and false pretenses by GIARMOLEO that Libertas had no problems that would impede the Libertas transaction, although Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES knew otherwise because GIARMOLEO is a former securities broker and owned a portion of Libertas.

81.    It would be inequitable to allow Defendants to continue to hold title to and possession of Plaintiffs' shares.

WHEREFORE Plaintiffs request the Court impose an equitable lien and construct a trust over the 7,000,000 shares in favor of Plaintiffs, who are the only parties with legitimate interest in said share, and any other such ancillary relief that this Court deems just and proper under the circumstances including interest and costs.

## COUNT THREE
## DECLARATORY RELIEF
### (Against All Defendants)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

82.     This is an action for declaratory relief and judgment.

83.     The parties entered into an agreement.

84.     It was understood that if the Libertas due diligence revealed negative information so that the Libertas deal would not proceed forward, that Plaintiff's shares would be returned.

85.     There is a bona fide dispute as to the ownership of the shares which are in the Defendants' control and in possession of ALPCO.  The parties are unsure of their rights and there is a legitimate, actual, real, present, continuing and bona fide need for a declaration of the parties' rights under the Agreement.

86.     Plaintiffs seek a declaration that Defendants and their agents and representatives have no valid legal or equitable rights in any of the 7,000,000 shares and that the shares are owned entirely by Plaintiffs, wherever those shares may be located.

WHEREFORE Plaintiffs request a declaration that Plaintiffs are the owners of said 7,000,000 Shares and that Defendants were holding the shares in trust for the benefit of Plaintiffs, costs, and any other such ancillary relief that this Court deems just and proper under the circumstances.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTIES
### (Against Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

87.     This is tort action for breach of fiduciary duty.

16

88.    At all relevant times, Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES held a position of trust and to hold Plaintiffs shares.

89.    It was understood that Plaintiffs would have the right to perform due diligence on Libertas and that Plaintiffs could cancel the deal if it found any problems during the due diligence search of Libertas.

90.    Defendants held the Shares in trust for the benefit of Plaintiffs.

91.    Defendants have breached their duties by failing to hold Plaintiffs' Shares in trust and failing to return those shares, upon Plaintiffs' demand.

92.    Defendants have also breached their fiduciary duty by self-dealing and trying to use the Shares as a bargaining tool.

93.    Defendants breached their duties by using Plaintiffs' shares for purposes, other than those agreed to by Plaintiffs.

94.    Defendants breached their duties by failing to account for all the Shares.

95.    Plaintiffs have been damaged as a direct result of Defendants' actions

WHEREFORE Plaintiffs demand compensatory damages, interest, costs and any other such ancillary relief that this Court deems just and proper under the circumstances.[1]

## COUNT FIVE
## CONVERSION
### (Against Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

96.    This is tort action for conversion.

97.    Defendants also obtained the Shares under false pretenses and fraud and, therefore, had no right to control the Shares from the inception.

---

[1] With respect to the torts alleged herein, Plaintiffs reserve the right to allege punitive damages after discovery.

98.    At all relevant times, Defendant GIARMOLEO and/or his affiliated companies, GOLDEN KEY and PRIVATE RESOURCES, had a duty to return Plaintiffs' property upon Plaintiffs' request in relation to the Libertas deal.

99.    Defendants control and possession of the Shares is unauthorized.

100.    Defendants have acted in bad faith and refused to return the property, even after breaching their duty to do so, thereby resulting in a continuing tort and harm to Plaintiffs.

101.    Plaintiffs have demanded the return of the shares but Defendants have refused to return those shares.

102.    Defendants have unlawfully misappropriated the Shares and deprived Plaintiffs of the use and interest in said Shares.

103.    Defendants' unauthorized use of Plaintiffs' property has caused harm to Plaintiffs.

WHEREFORE Plaintiffs demand damages, interest, costs, and any other such ancillary relief that this Court deems just and proper under the circumstances.

## COUNT SIX
## BREACH OF CONTRACT
### (Against Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

104.    This is an action for breach of contract.

105.    On or about April 29, 2010 Defendant GIARMOLEO individually and in concert with GOLDEN KEY and PRIVATE RESOURCES received and approved a excel spreadsheet prepared by G. Frank Labrozzi showing the various amounts of stock including the initial amount which induced Plaintiffs to place the Shares with Defendants specifically the column titled "Initial DP" in the amount of 7,000,000.  See Exhibit B.  Upon receipt of the $1,592,500

Plaintiff Helman would invest the net proceeds of $1,592,500 in Libertas, which was a beer company being promoted by Defendants. However, upon due diligence Plaintiffs discovered discrepancies and problems including, but not limited to, that the proposed company had been sited by the State of Texas for violation of Texas Security Statures which would pose a major impediment should the company attempt to enter the public market which was part of Defendant's presentation. Plaintiffs declined Defendants' investment opportunity and cancelled the agreement and demanded the return of Shares to Florida. However, Defendants refused and kept Plaintiffs stock in Compress Technologies, Inc. without payment of any kind. Plaintiffs attempted to negotiate even though it was against their best interest, but GIARMOLEO refused to return the stock.

106.    To date, Defendants have refused to return Plaintiffs' Shares and have failed to otherwise pay Plaintiffs for the 7,000,000 Shares.

107.    Plaintiffs have been deprived of economic benefit and ownership of Plaintiffs stock for over one year. Defendants have tried to use the Shares as a bargaining tool and have caused Plaintiffs significant financial loss, including the cost of this action.

108.    As a direct and proximate cause of Defendants' breach and refusal to either return the shares of common stock or pay $1,592,500, Plaintiffs have suffered significant financial loss, including the cost of this action.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, interest, and cost of this action and any other relief this Court deems just and equitable.

## COUNT SEVEN
## UNJUST ENRICHMENT
### (Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

109.    This is an action for unjust enrichment.

110.    Plaintiffs have demanded either the return of Plaintiffs' 7,000,000 Shares of Compress Technologies, Inc. shares held in the name of ALPCO and/or PRIVATE RESOURCES, further known as SHEI stock certificate number 918 or the payment of value of the shares when transferred.

111.    Defendants and/or their representatives and/or manager and/or affiliates have voluntarily accepted and retained the benefits conferred.

112.    Defendants have appreciated the benefits.

113.    The circumstances are such that it would be inequitable to allow Defendants and/or its owner or affiliates or represenative to retain the benefit of Plaintiffs' shares.

114.    Defendants have been unjustly enriched through the possession and control of Plaintiffs' shares without paying consideration to Plaintiffs and under circumstances where the Shares should be returned to Plaintiffs.

WHEREFORE, Plaintiffs request that the Court fashion an equitable remedy against Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES for compensatory damages, interest, and costs and any other relief this Court deems just and equitable.

## COUNT EIGHT
## FRAUDULENT INDUCEMENT
### (Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

115.   This is an action for fraud.

116.   At all relevant times, from March to May 2010, GIARMOLEO intentionally led Plaintiffs to believe he was a professional skilled in the distribution and sale of a large volume of shares of stock into a market with no or a limited amounts of trading, which was false and he knew it, as GIARMOLEO had his broker license suspended for fraud.

117.   At all relevant times, from March to May 2010, GIARMOLEO intentionally misled Plaintiffs to believe that the Shares would be secure and returned if not sold or, if sold, the money derived from the sale of Shares would be held in trust for Plaintiffs' benefit.   This was false and GIARMOLEO knew it.

118.   At all relevant times, from March to May 2010, GIARMOLEO represented that he had done deals like this many times and that the Shares would be held in trust.  The Shares were in fact never put in any type of "Trust" account, but rather deposited into an account at Batemen Securities, and account controlled by PRIVATE RESOURCES (a company controlled and represented by GIARMOLEO) and the Shares were subsequently transferred to ALPCO.

119.   At all relevant times, from March to May 2010, GIARMOLEO represented that he was intimately knowledgeable of Libertas, that he knew the owners of Libertas, that Libertas was undervalued, and that Libertas had no issue or red flags that would prevent the completion of the transaction.  GIARMOLEO knew these representations were false but intentionally made them to induce Plaintiffs to transfer the Shares before the due diligence on Libertas would reveal that GIARMOLEO and/or GOLDEN KEY owned five (5) percent of Libertas, that he knew of the serious security law violations and thus the company was not undervalued.

120.   Plaintiffs justifiably relied on GIARMOLEO's representations to their detriment by entering into an agreement to allow GIARMOLEO to act as broker and transferring the

Shares to his control, or the control of one of the companies he controlled, and temporarily suspending the security interest in the Shares.

121.   Plaintiffs continue to suffer harm, as Defendants refuse to return the Shares.

WHEREFORE, Plaintiffs demand rescission against Defendants and any other ancillary relief this Court deems just and equitable.

**COUNT NINE**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**(Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)**

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

122.   This is an action for violation of Florida's Deceptive and Unfair Trade Practices Act. Florida Statute Section 501.201 *et seq*.

123.   At all relevant times the acts complained of herein involved commerce and trade practices.

124.   GIARMOLEO intentionally misled Plaintiffs to believe he was a professional skilled in the distribution and sale of a large volume of shares of stock into a market with no or a limited amounts of trading, which was false and he knew it, as GIARMOLEO had his broker license suspended for fraud.

125.   At all relevant times, GIARMOLEO intentionally and falsely misled Plaintiffs to believe that he had intimate knowledge of Libertas, that Libertas was undervalued, that he did not own any of Libertas and that due diligence of Libertas would no reveal any negative issues.

126.   At all relevant times, GIARMOLEO falsely led Plaintiffs to believe that their Shares would be held in trust and returned to them if the due diligence revealed anything negative concerning Libertas or if Plaintiff otherwise canceled the deal.

127.   GIARMOLEO, and or the companies he controls, GOLDEN KEY and PRIVATE RESOURCES, implemented a scheme to obtain control of Plaintiffs' Shares, under false pretenses to help speed up the Libertas deal, and to use that control of the Shares to the detriment of Plaintiffs, with full knowledge that Defendants have no right to said Shares and have not paid anything to Plaintiffs in exchange for said Shares.

128.   Upon demand and after the due diligence revealed security law violations and Defendants' ownership interest in Libertas, GIARMOLEO refused to return the Shares.

129.   The above acts were unfair and/or deceptive in violation of Florida law, including the proposed sale of shares by an unlicensed dealer/broker--GIARMOLEO.

130.   Plaintiffs have been damaged as a direct result of Defendants' actions.

WHEREFORE, Plaintiffs request damages, statutory damages, fines, attorney fees, interest and costs against Defendants and any other relief this Court deems just and equitable.

## COUNT TEN
## CIVIL THEFT
### (Against Defendants GIARMOLEO, GOLDEN KEY and PRIVATE RESOURCES)

Plaintiffs re-allege paragraphs 1 through 63 as fully set forth above and state based upon information and belief.

131.   This is tort action for civil theft

132.   Defendants also obtained the Shares under false pretenses and fraud and, therefore, had no right to control or possess the Shares and under circumstances which constitute theft.

133.   At all relevant times, Defendant GIARMOLEO and/or his affiliated companies, GOLDEN KEY and PRIVATE RESOURCES, had a duty to return Plaintiffs' property upon Plaintiffs' request in relation to the Libertas deal.

134.   Defendants control and possession of the Shares is unauthorized.

135.   Defendants have acted in bad faith, with scienter and with the intent to deprive the Plaintiffs of their property and their property interest in the Shares.

136.   Plaintiffs have demanded the return of the shares but Defendants have refused to return those shares, including a civil theft demand and notice.

137.   Defendants have unlawfully misappropriated the Shares and deprived Plaintiffs of the use and interest in said Shares.

138.   Defendants' unauthorized use of Plaintiffs' property has caused harm to Plaintiffs.

WHEREFORE Plaintiffs demand treble-damages, interest, costs, attorney's fees, and any other such ancillary relief that this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all causes of action(s) alleged herein that are triable by jury as a matter of right.

Respectfully submitted,

THE STABENOW LAW FIRM, LLC
*Counsel for Plaintiffs*
300 South Biscayne Blvd., #1026
Miami, Florida 33131
T: (305) 904-3777
F: (305) 357-0962
Tony@StabenowLaw.com

By: _____
Tony L. Stabenow, Esq.
Florida Bar No.: 0033328

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. Mail this 10th day of November 2011, to: **Scaglione, Quesada and Bon, LLP**, 2600 Douglas Road, PH 10, Coral Gables Florida, 33134 (facsimile 305.447.0389).

By: _____
Tony L. Stabenow, Esq.
Florida Bar No.: 0033328

24

# EXHIBIT   A



Florida Department of State
Division of Corporations

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List    Next on List    Return To List        Officer/RA Name Search

No Events        No Name History

# Detail by Officer/Registered Agent Name

## Florida Limited Liability Company

NEW YORK OIL & GAS VENTURES LLC

### Filing Information

Document Number    L09000059164
FEI/EIN Number     N/A
Date Filed         06/18/2009
State              FL
Status             ACTIVE

### Principal Address

132 CLYDE STREET
SUITE 4
WEST SAYVILLE NY 11796

### Mailing Address

132 CLYDE STREET
SUITE 4
WEST SAYVILLE NY 11796

### Registered Agent Name & Address

GIARMOLEO, PAUL
6572 THORMAN ROAD
PORT CHARLOTTE FL 33981 US

### Manager/Member Detail

Name & Address

Title CEO

GIARMOLEO, PAUL M CEO
132 CLYDE STREET
WEST SAYVILLE NY 11796 US

### Annual Reports

Report Year    Filed Date
2010           05/03/2010

### Document Images

05/03/2010 -- ANNUAL REPORT
06/18/2009 -- Florida Limited Liability

Note: This is not official record. See documents if question or conflict.

Previous on List    Next on List    Return To List        Officer/RA Name Search

No Events        No Name History

Copyright © and Privacy Policies
State of Florida, Department of State

**2010 LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L07000019524

Entity Name: GOLDEN KEY BUSINESS VENTURES, LLC

FILED
Apr 29, 2010
Secretary of State

Current Principal Place of Business:

6572 THORMAN ROAD
PORT CHARLOTTE, FL 33981   US

New Principal Place of Business:

Current Mailing Address:

132 GLYDE ST., SUITE #4
WEST SAYVILLE, NY 11796   US

New Mailing Address:

FEI Number:                   FEI Number Applied For ( )         FEI Number Not Applicable (X)         Certificate of Status Desired ( )

Name and Address of Current Registered Agent:

GIARMOLEO, PAUL M CEO
6572 THORMAN ROAD
PORT CHARLOTTE, FL 33981   US

Name and Address of New Registered Agent:

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                                          Date

MANAGING MEMBERS/MANAGERS:

| | |
|---|---|
| Title: | TREE |
| Name: | GIARMOLEO, MICHAEL F TREASUE |
| Address: | 236 BARNSWALLOW COURT |
| City-St-Zip: | MANORVILLE, NY 11949 US |

I hereby certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statutes

SIGNATURE:   PAUL M GIARMOLEO                                    CEO                    04/29/2010

Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date

Download   Edit in Browser   Find

Unsupported Features  This workbook contains features that cannot be displayed in the browser.   Details...

Improve your experience  With the Windows Live Sign-in Assistant, you do not need to sign-in when you open your documents in the Office applications.   Install the Sign-in

Page 1 of 2

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | |
| 2 | Linear Variable Campaign | | | | | | | | | |
| 3 | | $0.35 | | 35.00% | 26.00% | 15.00% | 4.00% | 20.00% | | |
| 4 | | Paper | Total | Budget | Deal | Uncle Sam | Dist | Mgmt | Trigger Set | |
| 5 | Initial DP | 3,000,000 | $2,450,000 | $857,500 | $637,000 | $367,500 | $98,000 | $490,000 | Trigger Variable | Remaining Balance |
| | | | | | | | | | $1,592,500 | $1,592,500 |
| 6 | Tranch 1 | 3,250,000 | $1,137,500 | $398,125 | $295,750 | $170,625 | $45,500 | $227,500 | $739,375 | $2,331,875 |
| 7 | Tranch 2 | 3,250,000 | $1,137,500 | $398,125 | $295,750 | $170,625 | $45,500 | $227,500 | $739,375 | $3,071,250 |
| 8 | Tranch 3 | 3,250,000 | $1,137,500 | $398,125 | $295,750 | $170,625 | $45,500 | $227,500 | $739,375 | $3,810,625 |
| 9 | Tranch 4 | 3,250,000 | $1,137,500 | $398,125 | $295,750 | $170,625 | $45,500 | $227,500 | $739,375 | $4,550,000 |
| 10 | Tranch 5 | 3,250,000 | $1,137,500 | $398,125 | $295,750 | $170,625 | $45,500 | $227,500 | $739,375 | $5,289,375 |
| 11 | Tranch 6 * | 2,000,000 | $700,000 | $245,000 | $182,000 | $105,000 | $28,000 | $140,000 | $455,000 | $5,744,375 |
| 12 | Tranch 7 * | 2,000,000 | $700,000 | $245,000 | $182,000 | $105,000 | $28,000 | $140,000 | $455,000 | $6,199,375 |
| 13 | Tranch 8 * | 2,000,000 | $700,000 | $245,000 | $182,000 | $105,000 | $28,000 | $140,000 | $455,000 | $6,654,375 |
| 14 | Tranch 9 * | 2,000,000 | $700,000 | $245,000 | $182,000 | $105,000 | $28,000 | $140,000 | $455,000 | $7,109,375 |
| 15 | Total | 23,250,000 | $10,937,500 | $3,828,125 | $2,843,750 | $1,640,625 | $437,500 | $2,187,500 | $7,109,375 | 7,109,375 |
| 16 | | | Gross | * | * | * | * | * | NET | |

Overage  31,250,000